1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC R. ALLEN, | Case No.  1:05-cv-00146-AWI-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| J. RIVERA, et al. | |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY (30) DAYS |
| | ECF NO. 53 |

Plaintiff Cedric R. Allen ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action against Defendants pursuant to 42 U.S.C. § 1983.  On July 3, 2012, Defendants Battles, Beer, McVay, Munoz, Quillen and Rivera ("Defendants") filed a motion for summary judgment.  (ECF No. 53.)  Plaintiff filed an opposition on March 18, 2013. (ECF No. 67.)  Defendants filed a reply on April 23, 2013.  (ECF No. 72.)

This matter was submitted to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303 for findings and recommendations to the district judge.  For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be denied.

/ / /

/ / /

1

1

## I.

2

## BACKGROUND

3      This action proceeds on Plaintiff's amended complaint filed on June 4, 2010. (ECF No.

4  25.)  On May 17, 2011, the Court dismissed some of the claims raised in Plaintiff's amended

5  complaint, but allowed Plaintiff to proceed on his Eighth Amendment excessive force claim

6  against Defendants Rivera, Quillen, Beer, Munoz, McVay, Battles and Does I through V.  (ECF

7  No. 34.)

8      A.      **Defendants' Statement of Undisputed Facts**

9      Defendants' Statement of Undisputed Facts describes the following sequence of events:

10      On June 4, 2004, Plaintiff was in the custody of the California Department of Corrections

11  and Rehabilitation ("CDCR") at California State Prison Corcoran ("CSP-COR").    (Defs.'

12  Statement of Undisputed Facts ("Defs.' SUF") ¶ 1.)    At all relevant times to this action,

13  Defendants Rivera and Quillen were Correctional Officers with CDCR at CSP-COR.  (Defs.'

14  SUF ¶ 2.)  At all times relevant to this action, Defendants Munoz, Beer, McVay and Battles were

15  Correctional Sergeants with CDCR at CSP-COR.  (Defs.' SUF ¶ 3.)

16      On June 4, 2004, at approximately 8:05 a.m., Rivera and Quillen were assigned as 4A

17  Facility Medical Escorting Officers.  (Defs.' SUF ¶ 4.)  At that time, Rivera and Quillen were

18  escorting Plaintiff to the 4A Medical Clinic.  (Defs.' SUF ¶ 5.)  As the officers approached the

19  "C" section door with Plaintiff, Quillen ordered Plaintiff to stop so that Rivera could clear the

20  way into the rotunda area for the escort.  (Defs.' SUF ¶ 6.)  Rivera continued to walk in front of

21  Plaintiff and Quillen in order to ensure that the rotunda area was clear for the escort.  (Defs.' SUF

22  ¶ 7.)

23      When Rivera was just in front of Plaintiff and Quillen, Plaintiff kicked at Rivera without

24  warning or provocation, striking Rivera in the right ribcage with the toe portion of his right foot.

25  (Defs.' SUF ¶ 8.)  Fearing that Plaintiff would kick him again, Rivera un-holstered his MK-9 OC

26  pepper spray, sprayed Plaintiff in the facial area with a single one-second burst of OC pepper

27  spray, and ordered Plaintiff to get down.  (Defs.' SUF ¶ 9.)  Plaintiff resisted and Quillen

28  attempted to take Plaintiff to the ground by placing his right hand on Plaintiff's right bicep and

2

his left hand on Plaintiff's right shoulder in order to force Plaintiff downward into a prone position.  (Defs.' SUF ¶ 10.)  Rivera assisted Quillen by grabbing Plaintiff's left elbow area with his left hand and the back of Plaintiff's jumpsuit with his right hand in order to gain control of Plaintiff's upper body and take him down to the ground in a downward motion.  (Defs.' SUF ¶ 11.)

Once on the ground, Plaintiff continued to resist Rivera and Quillen by kicking his legs in an upward and downward motion.  (Defs.' SUF ¶ 12.)  Officer Rivera gained control of Plaintiff's legs by holding Plaintiff's ankles down until responding staff arrived.  (Defs.' SUF ¶ 13.)

Munoz, who had responded to an alarm, arrived at the scene of the incident and saw Rivera and Quillen on the ground, trying to gain control of Plaintiff.  (Defs.' SUF ¶ 14.)  Munoz instructed Control Booth Officer G. Robles to give him a set of leg irons, which Munoz then applied to Plaintiff and ordered him to stop resisting.  (Defs.' SUF ¶ 15.)  Plaintiff complied. (Defs.' SUF ¶ 16.)

Munoz then instructed Rivera and Quillen to assist Plaintiff to his feet and to escort him to the rotunda.  (Defs.' SUF ¶ 17.)  Once Plaintiff, Rivera and Quillen were in the rotunda, Munoz instructed Officer Robles to open the "A" section door so that Plaintiff could be escorted to the "A" section lower tier shower.  (Defs.' SUF ¶ 18.)  Munoz then instructed Rivera and Quillen to escort Plaintiff to the "A" section lower tier shower for decontamination from pepper spray. (Defs.' SUF ¶ 19.)

Plaintiff was placed in the shower and decontaminated with copious amounts of cool running water.  (Defs.' SUF ¶ 20.)  Munoz instructed Officers Rivera and Quillen to escort Plaintiff to the rotunda area to be medically evaluated by Licensed Vocational Nurse V. Morales. (Defs.' SUF ¶ 21.)  Morales was known by the last name Suarez in 2004.  (Defs.' SUF ¶ 22.)

Munoz then instructed Correctional Officers D. Luther and E. Henry to relieve Rivera and Quillen.  (Defs.' SUF ¶ 23.)  Morales noted one laceration under Plaintiff's lower lip that was actively bleeding, that he had been exposed to O.C. pepper spray, and that he had been decontaminated.  (Defs.' SUF ¶ 24.)  Morales referred Plaintiff to the Acute Care Hospital ("ACH") for further treatment.  (Defs.' SUF ¶ 24.)  Plaintiff was escorted to the ACH without

3

1    further incident.  (Defs.' SUF ¶ 24.)

2         Munoz instructed Rivera and Quillen to report to the ACH to be medically treated.

3    (Defs.' SUF ¶ 25.)  The examination of Quillen revealed O.C. pepper spray exposure and that he

4    had been decontaminated.    (Defs.' SUF ¶ 26.)    The examination of Rivera revealed a

5    bruised/discolored area on his right side underneath his arm, as well as O.C. pepper spray

6    exposure, and that he had been decontaminated.  (Defs.' SUF ¶ 27.)  Quillen and Rivera were

7    medically cleared and returned to their normal duties.  (Defs.' SUF ¶ 28.)

8         On June 4, 2004, at approximately 11:20 a.m., Lieutenant M.A. Melo attempted to

9    conduct a video-taped interview with Plaintiff regarding the incident.   (Defs.' SUF ¶   29.)

10   Sergeant Beer operated the video camera.  (Defs.' SUF ¶ 29.)  Prior to the activation of the video

11   camera, Plaintiff told Lieutenant Melo that he did not wish to make a statement.  (Defs.' SUF ¶

12   30.)  Lieutenant Melo then instructed Plaintiff to repeat what he said on camera about not making

13   a statement.  (Defs.' SUF ¶ 31.)  Plaintiff complied, stating "I have no comment" while the video

14   camera was recording.   (Defs.' SUF ¶ 32.)   Plaintiff's swollen lower lip is visible in the

15   recording.  (Defs.' SUF ¶ 33.)

16        Correctional Sergeant Battles arrived on the scene of the incident with Plaintiff after the

17   situation was under control and did not have any additional involvement with the incident.

18   (Defs.' SUF ¶ 34.)  Correctional Sergeant McVay was not involved in any incident with Plaintiff

19   on June 4, 2004.  (Defs.' SUF ¶ 35.)

20        **B.     Plaintiff's Opposition/Verified Complaint**

21        Plaintiff filed an opposition on March 18, 2013.  (ECF No. 67.)  Plaintiff's opposition

22   included a "Summary of Facts."  Plaintiff's Summary of Facts describes an incident on June 4,

23   2004 where Plaintiff was attacked by Defendants.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 2-8.)

24   Plaintiff's Summary of Facts is largely identical to the allegations in Plaintiff's complaint.

25   Plaintiff also attached several declarations to his opposition.  (Pl.'s Opp'n to Defs.' Mot. for

26   Summ. J. 23-32.)

27        Plaintiff's verified complaint alleges facts substantially different from the events

28   described in Defendants' statement of undisputed facts.  For example, Plaintiff contends that

4

1   Rivera hit Plaintiff repeatedly in the head with a long metal key.  (Am. Compl. 3:24-27.)  Rivera

2   also "mased[sic]" Plaintiff in the face several time while Plaintiff was lying face down in a prone

3   position, in handcuffs and offering no resistance.   (Am. Compl. 4:1-4.)   River and Quillen

4   punched and kneed Plaintiff and slammed him into a wall.  (Am. Compl. 4:4-9.)   Beer choked

5   Plaintiff for 40-50 seconds and Munoz attempted to spray pepper spray down Plaintiff's mouth.

6   (Am. Compl. 4:25-5:10.)  McVay punched Plaintiff in the face, slammed Plaintiff into a concrete

7   pillar and nearly drowned Plaintiff in the shower.  (Am. Compl. 5:16-7:9.)  Battles ordered other

8   officers to place a spit mask on Plaintiff even though Plaintiff complained about difficulty

9   breathing.  (Am. Compl. 6:16-7:11.)

10            **C.       Defendants' Reply**

11            On April 23, 2013, Defendants filed a reply to Plaintiff's opposition.  (ECF No. 72.)  In

12   their reply, Defendants argue that Plaintiff's opposition fails to comply with Local Rule 260(b)

13   because Plaintiff failed to reproduce the itemized Statement of Undisputed Facts and admit those

14   facts which are undisputed and deny those which are disputed with citations to evidence

15   supporting the denial.  (Defs.' Reply to Pl.'s Opp'n to Mot. for Summ. J. 2:5-13.)  Defendants

16   also raised several objections to the evidence Plaintiff attached to his opposition.  (Defs.' Obj. to

17   Pl.'s Evidence in Supp. of Opp'n to Defs.' Mot. for Summ. J. and Mot. to Strike 1:20-4:13.)

18                                                        **II.**

19            **LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT**

20            Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if

21   the movant shows that there is no genuine dispute as to any material fact and the movant is

22   entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56(a).  "[A] party

23   seeking summary judgment always bears the initial responsibility of informing the district court

24   of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

25   to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

26   demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S.

27   317, 323 (1986).

28   / / /

1    In resolving the summary judgment motion, the Court examines the pleadings,

2    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3    Federal Rule of Civil Procedure 56(c).  The evidence of the opposing party is to be believed,

4    Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

5    before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587

6    (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

7                                        **III.**

8                                    **DISCUSSION**

9    Defendants argue that they are entitled to summary judgment because the facts

10   demonstrate that they did not use excessive force against Plaintiff in violation of the Eighth

11   Amendment.  ("Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' MPA") 5:16-9:9.)

12   Specifically, Defendants argue that the force applied by Rivera, Quillen and Munoz was applied

13   in good-faith to regain control of Plaintiff after he attacked Rivera.  (Defs.' MPA 6:16-8:16.)

14   Defendants also argue that Battles, Beer and McVay did not use any force against Plaintiff and

15   were, at most, tangentially involved in the alleged incident.  (Defs.' MPA 8:17-9:9.)  Defendants

16   also argue that they are entitled to qualified immunity.  (Defs.' MPA 9:10-13:14.)

17       **A.    Plaintiff's Untimely and Improperly Formatted Opposition**

18   Defendants argue that Plaintiff's opposition is improperly formatted and that much of the

19   evidence attached to Plaintiff's opposition is inadmissible.  The Court notes that Plaintiff's

20   opposition did not comply with the requirements set forth in the Local Rules despite the fact that

21   the Court issued a Rand notice to Plaintiff expressly setting forth the Local Rule's requirements.

22   Under normal circumstances, the Court would be disinclined to consider a filing that

23   blatantly disregarded requirements set forth in a court order.  However, in this case, Defendants'

24   motion for summary judgment must be denied even if Plaintiff's opposition was disregarded in its

25   entirety.[1]    Irrespective of any defects in Plaintiff's opposition, the Court must examine

26   ───────────────

27   [1] Moreover, the Ninth Circuit has instructed the district courts that the Court may not grant summary judgment solely because of procedural defects in Plaintiff's opposition.  See Martinez v. Stanford, 323 F.3d 1178, 1182-83 (9th Cir. 2003); Marshall v. Gates, 44 F.3d 722, 724-25 (9th Cir. 1995); Henry v. Gill Industries, Inc., 983 F.2d 943, 949 (9th

28   Cir. 1993).  While this court is very mindful of and adheres to the rule of law and procedures which govern those

                                         6

1  Defendants' moving papers and determine whether Defendants affirmatively demonstrated that

2  they are entitled to judgment as a matter of law.  Martinez, 323 F.3d at 1183.

3         As discussed in more detail below, Defendants' motion requests summary judgment in

4  circumstances that do not warrant summary judgment.  Plaintiff's excessive force claims are

5  based on facts and circumstances that are within Plaintiff's personal knowledge and which

6  Plaintiff could competently testify to during trial.  Accordingly, in order to prevail, Defendants

7  presumably will attack Plaintiff's credibility.  "The courts have long recognized that summary

8  judgment is singularly inappropriate where credibility is at issue.  Only after an evidentiary

9  hearing or a full trial can these credibility issues be appropriately resolved."  SEC v. Koracorp

10 Industries, Inc., 575 F.2d 692, 699 (9th Cir. 1978).  Defendants' motion for summary judgment

11 must be denied irrespective of the procedural defects in Plaintiff's opposition.

12 **B.      The Allegations In Plaintiff's Complaint Create A Genuine Dispute As To
             The Material Facts**
13

14        Defendants' motion must be denied because Defendants' have not affirmatively

15 demonstrated that they are entitled to judgment as a matter of law.  In this case, the allegations

16 made in Plaintiff's verified complaint are sufficient in and of themselves to establish a genuine

17 dispute as to the material facts with respect to Plaintiff's Eighth Amendment excessive force

18 claim.

19        The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

20 "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"

21 Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th

22 Cir. 1968)).  Where prison officials are accused of using excessive physical force, "[t]he 'core

23 judicial inquiry [is] 'whether force was applied in a good-faith effort to maintain or restore

24 discipline, or maliciously and sadistically to cause harm.'"  Wilkins v. Gaddy, 559 U.S. 34, 130

25 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  Factors relevant

26 to the analysis are the need for the application of force, the relationship between the need and the

27

28 rules, in this case the procedural defect is irrelevant to the analysis.

1    amount of force that was used and the extent of the injury inflicted.  Whitley v. Albers, 475 U.S.

2    312, 321 (1986).  Other factors to be considered are the extent of the threat to the safety of staff

3    and inmates, as reasonably perceived by the responsible officials on the basis of the facts known

4    to them, and any efforts made to temper the severity of a forceful response.  Id.

5         Federal Rule of Civil Procedure 56(c)(3) expressly permits the Court to consider materials

6    in the record not cited in the moving papers, such as the operative pleading.  Moreover, "Rule 56

7    requires a district court to consider the motion papers as well as such other papers in the record to

8    which they refer."  Martinez, 323 F.3d at 1184.  In this case, Defendants' motion cited Plaintiff's

9    amended complaint.  (See, e.g., Defs.' MPA pg. 6:11-13 and pg. 8 n. 1.)  Plaintiff's amended

10   complaint is verified, alleges facts based upon personal knowledge admissible as evidence and

11   therefore may be considered in opposition to summary judgment.  McElyea v. Babbitt, 833 F.2d

12   196, 197 (9th Cir. 1987).

13        Plaintiff's complaint alleged use of force far more excessive than the incidents described

14   in Defendants' statement of undisputed facts.  For example, Plaintiff alleged that he was hit

15   repeatedly in the head with a long metal key.  (Am. Compl. 3:24-27.)  Plaintiff alleged that Rivera

16   "mased[sic] Plaintiff in the face several times" (Am. Compl. 4:1-2), contradicting Defendants'

17   contention that Plaintiff was hit with a single one-second burst of pepper spray.  Plaintiff alleged

18   that he was punched, kneed, dragged and slammed into walls.  (Am. Compl. 4:4-9.)  Plaintiff was

19   allegedly strangled.  (Am. Compl. 4:17-24.)

20        Although Defendants contend that Battles, Beer and McVay were not directly involved in

21   using any force against Plaintiff, Plaintiff's verified complaint states otherwise.  Beer allegedly

22   strangled Plaintiff for 40-50 seconds.  (Am. Compl. 4:25-5:5.)  McVay allegedly struck Plaintiff

23   in the face with a closed fist, slammed Plaintiff into the ground and dug his knee into Plaintiff's

24   jaw.  (Am. Compl. 5:16-22.)  McVay also allegedly slammed Plaintiff's forehead into a pillar of

25   concrete (Am. Compl. 6:6-13) and nearly drowned Plaintiff in water (Am. Compl. 6:20-7:9.)

26   Battles ordered officers to place a spit mask over Plaintiff's head despite Plaintiff's pleas that he

27

28

                                         8

1 | could not breathe.  (Am. Compl. 7:16-8:11.)[2]

2 |      "'Because [the excessive force inquiry] nearly always requires a jury to sift through

3 | disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment

4 | as a matter of law in excessive force cases should be granted sparingly.'"  Smith v. City of

5 | Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (quoting Santos v. Gates, 287 F.3d 836, 853 (9th Cir.

6 | 2002)).  Here, Defendant's motion for summary judgment relies on facts which are contradicted

7 | in Plaintiff's verified complaint.  As set forth above, the facts alleged in Plaintiff's verified

8 | complaint are sufficient to create a genuine issue of disputed fact because they are based personal

9 | knowledge and would be admissible as evidence.

10 |      Defendants argue that there was a clear need for the application of force when Plaintiff

11 | kicked Defendant Rivera.  However, the degree of force alleged by Plaintiff is sufficient to

12 | establish a genuine issue of disputed fact as to whether the amount of force used was appropriate.

13 | See Wilkins, 130 S. Ct. at 1178 ("core judicial inquiry" is whether force was applied in good faith

14 | to maintain or restore discipline or maliciously and sadistically to cause harm).  Here, Plaintiff's

15 | verified complaint presents sufficient admissible evidence to create a genuine issue of disputed

16 | fact as to whether the force used by Defendants was appropriate or whether the force used was

17 | applied maliciously and sadistically to cause harm.  Accordingly, the Court finds that Defendants

18 | are not entitled to summary judgment.

19 |     **C.**    **Defendants Are Not Entitled To Qualified Immunity**

20 |      Defendants argue that they are entitled to qualified immunity.  "The doctrine of qualified

21 | immunity protects government officials 'from liability for civil damages insofar as their conduct

22 | does not violate clearly established statutory or constitutional rights of which a reasonable person

23 | would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.

24 | Fitzgerald, 457 U.S. 800, 818 (1982)).  In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme

25 |

26 | _____

27 | [2] It is worth noting that Defendants did not submit Plaintiff's deposition testimony as evidence in support of their motion for summary judgment.  Defendants did not submit any evidence or argument challenging Plaintiff's ability to submit evidence supporting his version of the facts as recited in his complaint.  Accordingly, Defendants have not borne their burden of demonstrating that that there is no genuine dispute as to the material facts.

28 |

1  Court set forth a two-step sequence for resolving claims of qualified immunity.[3]  First, a court

2  must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right.

3  Saucier, 533 U.S. at 201.  Second, if the plaintiff has satisfied the first step, the court must decide

4  whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

5  Id.  If the defendant did not violate a clearly established constitutional right, the defendant is

6  entitled to qualified immunity from plaintiff's claims.  Pearson, 555 U.S. at 232 (citing Anderson

7  v. Creighton, 483 U.S. 635, 640 (1987)).

8        As discussed above, Plaintiff alleged facts which set forth a violation of a constitutional

9  right.  Plaintiff's verified complaint describes malicious and sadistic actions by all Defendants

10  such as punching, kicking, slamming, pepper spraying and choking Plaintiff.  Although Plaintiff

11  concedes that he kicked Rivera, the law on excessive force under the Eighth Amendment requires

12  the use of force to be proportional to the need.  Here, Plaintiff has adequately alleged use of force

13  that was unconstitutionally disproportionate to the need for force.

14        As to the second step of the qualified immunity analysis, the Court finds that Plaintiff

15  alleged sufficient facts to create a genuine issue of disputed fact as to whether the right at issue

16  was clearly established at the time of Defendants' alleged misconduct.  Defendants' motion

17  presumes that their version of the events that took place on June 4, 2004 is conclusive.  However,

18  as discussed above, Plaintiff's verified complaint is sufficient to establish a genuine issue of

19  disputed fact.  Accordingly, the issue is whether, as of June 4, 2004, the law was clearly

20  established that the conduct alleged by Plaintiff violated the Eighth Amendment.

21        The law on excessive force under the Eighth Amendment was clearly established as of

22  June 4, 2004.  See Hudson v. McMillian, 503 U.S. 1 (1992) (use of force may violate Eighth

23  Amendment even if prisoner does not suffer serious injury); Whitley v. Albers, 475 U.S. 312

24  (1986) (use of force during prison security measure violates Eighth Amendment if applied

25  maliciously and sadistically for purpose of causing harm); see also Covington v. Fairman, 123

26  ───────────
[3] Although Saucier established a mandatory two-step approach, the Supreme Court modified Saucier and held that
27  courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity
analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at
28  236.

Fed. Appx. 738, 741 (9th Cir. 2004) ("In September 1998 it was clearly established that inmates were protected from wanton beatings that exceeded correctional officers' good-faith efforts to address a violation of prison rules.").  Plaintiff's verified complaint alleged use of force that clearly violated Eighth Amendment standards established as of June 4, 2004.  Accordingly, Defendants are not entitled to qualified immunity.

## IV.

## CONCLUSION AND RECOMMENDATION

As set forth above, Defendants failed to carry their burden of demonstrating that they are entitled to summary judgment.  Plaintiff's verified complaint is sufficient to establish a genuine issue of disputed material fact with respect to whether Defendants used excessive force against Plaintiff.  Moreover, Defendants are not entitled to summary judgment on the issue of qualified immunity because the verified complaint alleges facts sufficient to establish a genuine issue of disputed material fact with respect to whether Defendants' actions violated clearly established law.

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are

//
//
//
//
//

1 | advised that failure to file objections within the specified time may waive the right to appeal the
2 | District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 1, 2013**
_____

UNITED STATES MAGISTRATE JUDGE

12